Filed 5/30/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>         Plaintiff and Respondent,<br><br>v.<br><br>SHAWN SHIELDS,<br><br>         Defendant and Appellant. | A149037<br><br>(Solano County<br>Super. Ct. No. VCR225185) |

## I.  INTRODUCTION

Shawn Shields (appellant) became the subject of a police investigation after he accepted a request to become a friend on Facebook with a fictional 17-year-old prostitute created by a Solano County detective.  The relationship appellant formed with this fictional person led to his arrest and conviction by a jury of three felony offenses:  human trafficking of a minor for a commercial sex act (Pen. Code, § 236.1, subd. (c)(1))[1]; pandering by encouraging another person to become a prostitute (§ 266i, subd. (a)(2)); and attempted pimping a minor over the age of 16 (§§ 664, 266h, subd. (b)(1)).

Appellant seeks reversal of his conviction for human trafficking of a minor on two related grounds.  First, he contends that section 236.1, subdivision (c) (section 236.1(c)) is unconstitutional because it punishes an attempt to commit a crime without requiring proof of specific intent to commit the crime.  Second, appellant contends that the trial court committed prejudicial error by instructing the jury at his trial that a defendant's mistake about the age of his victim is not a defense to human trafficking of a minor.  Although we reject these contentions, we will reverse this conviction on another ground,

---

[1] Unless otherwise indicated, all statutory references are to the Penal Code.

1

which was appellant's primary defense in the trial court. Appellant did not commit the completed offense of human trafficking of a minor because the alleged victim of this crime was not a person under the age of 18.

Appellant also seeks reversal of his conviction for attempted pimping of a minor over the age of 16, contending that the trial court erred by instructing the jury that a mistake about the victim's age was not a defense to this charge. We conclude that any error in giving this instruction was not prejudicial. Therefore, we affirm the attempted pimping conviction along with the pandering conviction, which is not challenged on appeal. However, we reverse the human trafficking conviction and remand for further proceedings.

## II. STATEMENT OF FACTS

In January 2015, Detective Jarrett Tonn was assigned to a crime reduction team responsible for addressing the pervasive problem of "sex and human trafficking within the City of Vallejo." In November 2015, Tonn created a Facebook account for a fictional prostitute named Rachel Irving. Tonn sent friend requests on behalf of Irving to people he found on various public fan-based Web sites. Appellant accepted one such request and, on November 12, he sent Irving the following message: "I would love to see what you look like." Irving responded in kind, which led to an ongoing exchange of messages culminating in appellant's arrest on November 15, 2015. Here, we briefly summarize the interactions between appellant and Irving.[2]

After appellant sent his first message to Irving on the afternoon of November 12, the two engaged in banter, and shared details about themselves for about an hour. Irving said she was working for "$," that she was not in the Bay Area but had a sick aunt in Vallejo who she planned to visit, and that she was contacting appellant from a coffee shop because her phone only worked on Wi-Fi. She told appellant she needed to get back

---

[2] The messages exchanged between appellant and Rachel Irving were recorded in an 88-page transcript that was admitted into evidence at appellant's trial. We use Irving's name when referring to the fictional character that Tonn created with the understanding that Irving is not an actual person.

to work but would stay in touch. Appellant gave Irving his phone number, encouraged her to get a phone, and said he was available if she needed him.

Shortly after 4:00 p.m., Irving messaged that she was on a five-minute break. Appellant asked if Irving had a significant other, Irving responded that she did not and that she was new to the area. Appellant offered to speak for Irving and said she should "come my way and let our actions take ova." Irving said she was used to doing her own thing and she did not even know how much money she could make "up there." Appellant replied, "More than out there but see how you like it and let me know they just are real thirsty out there so put them in they place and you'll be fine out there I'm from Oakland but its, money in the south Bay baby let's get it." Irving asked "how much for just straight sex," and said that if she came there she would need somebody to buy her a ticket because she did not have an "id." Appellant said Irving was "doing too much on this messenger baby," but also asked for a picture and told Irving she could set her own price and said she should make "them pay for every min." Irving asked how appellant wanted things to work between them, explaining that she had not had "a daddy for a minute," but that she would work hard and be loyal. Also, Irving expressed concern that Oakland was a rough area. Appellant said that the area was not rough for him because he was settled there and that it would be good "training" for Irving.

At around 7:30 p.m., appellant checked in with Irving, who said she was working hard and "gonna get a rack." Appellant gave Irving advice about what to charge and how to develop clients. Appellant also said, "you'll be my bottom to the Top!!!#." Irving shared that she used to work with another person but he got arrested. She said she was "in it for $$$$$," and asked what she should do. Appellant advised her to create a brand and said that "your networking becomes your net worth$$." Irving wanted to know if appellant was going to be her "daddy." Appellant said he would be, as soon as she sent him a "cf" or a "choosing fee." Irving said she was going to Vallejo to visit her aunt the following week and appellant agreed to pick her up even if she did not yet have the money to pay his fee.

On the morning of November 13, 2015, appellant contacted Irving, who responded that she hated Fresno and needed to get out. Appellant asked how much money Irving had made the night before and said he would meet her whenever she was ready. Irving said she was scared to meet appellant, explaining she did not want to bring problems on him, but she was only 17 and had a warrant. Appellant responded, "youngsta huh okay I appreciate your honesty and IL grow you up when you turn 18." Irving apologized, suggested appellant no longer wanted her, and said she would not bother him again. Appellant said that he was not saying no, just that "we gotta do this a different way baby." He told her to go get a phone, and to focus on her safety until she got together with him, saying "I'm here baby . . . my 'from the bottom to the Top queen'."

Throughout the day on November 13, appellant checked in with Irving, asking whether she had a phone yet, encouraging her to put money aside, and discussing their prospective relationship. Appellant told Irving to send the "cf" by money gram and asked if she could drive, explaining that "I got an I d for you to help you stay unda so you can last til you turn 18." That night, Irving said she was going on a "date." Later, she wrote that she could not stop crying. Appellant responded that he was going to come pick her up the next day.

On the morning of November 14, 2015, Irving sent a message that her aunt was in the hospital in Vallejo and her grandmother had sent her a ticket so she could visit. Appellant responded with words of comfort, and the two arranged to meet after the visit. They exchanged messages throughout that day and the following day. On November 15 at around 7:30 p.m., Irving sent a message with an address where she wanted to be picked up. Less than an hour later, appellant messaged that he was outside the gate and described his car.

When Detective Tonn received the message that appellant was outside, he contacted officers who were conducting surveillance at the meeting place. The officers made an investigative stop of the car appellant had described to Irving, found appellant and another male occupant, and retrieved appellant's cell phone. Tonn arrived at the scene, told appellant that Irving was a runaway, and obtained his consent to search the

4

phone. On it Tonn found a Facebook application that linked to the profile appellant had used to communicate with Rachel Irving.

Appellant was arrested, waived his *Miranda* rights and participated in a videotaped interview with Detective Tonn. Appellant denied that his plan was to pick up Irving so she could be a prostitute in Oakland. Initially, he claimed he was just trying to be helpful and was going to give Irving a ride wherever she wanted to go. Then he said that he thought someone was playing a joke on him and he was just playing along. Later appellant said that he started out thinking the entire thing was a joke, but when he heard about Irving's sick aunt, he felt sorry for her, thought she needed someone to look out for her and wanted to be that person. Finally, appellant offered this explanation: "I'm gonna be totally honest with you . . . . I was gonna get the money and drop her off and I wasn't gonna see her again. You know 'cause I needed the money . . . I was gonna get the money and I was gonna drop her off and I wasn't gonna see her again." After hearing this statement, Tonn asked, "You were just gonna steal money from a 17-year-old?" Appellant responded that it would not be stealing because she was going to give it to him. He insisted that although he wanted the money, he did not intend to become Irving's pimp.

Appellant's jury trial was held in January 2016. Detective Tonn testified as a percipient witness and as an expert regarding the "relationships that occur in the business of prostitution, as well as the nomenclature and verbiage associated there with." Tonn explained for the jury the significance of many of the statements appellant exchanged with Irving. For example, when appellant told Irving, "you'll be my bottom to the top," he was telling her that she would be his number one prostitute. After Irving disclosed she was only 17 and had a warrant, appellant's response that "IL grow you up when you turn 18," meant that appellant would guide Irving into prostitution. And, when appellant told

5

Irving he would give her an ID "to help you stay unda so you can last til you turn 18," he was offering her a fake ID that would help her stay under the radar.[3]

The jury returned guilty verdicts as to the three counts charged against appellant: human trafficking of a minor for a sex act, pandering, and attempted pimping of a minor over the age of 16. In July 2016, the court sentenced appellant to a midterm eight-year sentence for the human trafficking conviction and stayed sentencing as to the other convictions pursuant to section 654.

### III. DISCUSSION

#### A. Section 236.1(c) Does Not Violate Due Process

Appellant contends his conviction for human trafficking of a minor must be reversed because section 236.1(c) violates the due process clause requirement that "the prosecution [must] prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged." (*Patterson v. New York* (1977) 432 U.S. 197, 210.) He argues that section 236.1(c) violates this requirement by authorizing a conviction for attempted human trafficking of a minor without requiring the prosecution to prove the defendant specifically intended to commit this crime.[4]

#### 1. The Statute

Under California law, the crime of human trafficking is comprised of three distinct offenses, which are codified in section 236.1: (1) the deprivation or violation of the personal liberty of another with the intent to obtain forced labor or services (§ 236.1, subd. (a)); (2) the deprivation or violation of the personal liberty of another with the intent to violate one of several specified Penal Code provisions (§ 236.1, subd. (b)); and

---

[3] Tonn also deciphered phrases for the jury, such as: a "daddy" is a pimp; a "cf" or "choosing fee" is the fee a prostitute pays someone to be her pimp; and a "rack" is $1,000.

[4] Appellant concedes he did not raise this issue below, but contends that it is a meritorious issue of law, and that the failure to raise it below constituted ineffective assistance of counsel. We exercise our discretion to address this new claim because it involves a constitutional issue and pertains to the enforcement of a penal statute. (*People v. Marchand* (2002) 98 Cal.App.4th 1056, 1061.)

6

(3) causing or attempting to cause a person who is a minor to engage in a commercial sex act with the intent to violate one of several specified Penal Code provisions (§ 236.1, subd. (c)).

In this case, we are concerned with section 236.1(c), the third statutory definition of human trafficking, which applies when the victim of the alleged offense is a minor. Section 236.1(c) was added to the human trafficking statute in 2012, following voter approval of Proposition 35, the Californians Against Sexual Exploitation Act (the CASE Act). (*In re M.D.* (2014) 231 Cal.App.4th 993, 998–999.) An important purpose of the CASE Act is to "protect trafficked minors by treating them as victims, not criminals, and ensuring they receive services to protect them from exploitation. [Citation.]" (*People v. Brown* (2017) 14 Cal.App.5th 320, 324.) In approving Proposition 35, California voters found and declared, among other things: " 'Upwards of 300,000 American children are at risk of commercial sexual exploitation, according to a United States Department of Justice study. Most are enticed into the sex trade at the age of 12 to 14 years old, but some are trafficked as young as four years old. Because minors are legally incapable of consenting to sexual activity, these minors are victims of human trafficking whether or not force is used.' " (*In re Aarica S.* (2014) 223 Cal.App.4th 1480, 1485–1486.)

Section 236.1(c) states in part: "A person who causes, induces, or persuades, or attempts to cause, induce, or persuade, a person who is a minor at the time of commission of the offense to engage in a commercial sex act, with the intent to effect or maintain a violation of Section 266, 266h, 266i, 266j, 267, 311.1, 311.2, 311.3, 311.4, 311.5, 311.6, or 518 is guilty of human trafficking." A commercial sex act is "sexual conduct on account of which anything of value is given or received by a person." (§ 236.1, subd. (h)(2).) "Trafficking a minor triggers a punishment triad of five, eight, or twelve years and a fine up to $500,000. [Citation.] If force or fear is used, the punishment is 15 years to life and a fine of up to $500,000. [Citation.]" (*People v. Brown* (2017) 14 Cal.App.5th 320, 337.)

7

Section 236.1 precludes a defendant charged with violating section 236.1(c) from presenting two defenses. First, consent by the victim is not a defense to this crime. (§ 236.1, subd. (e).) Second, "Mistake of fact as to the age of a victim of human trafficking who is a minor at the time of the commission of the offense is not a defense to a criminal prosecution under this section." (§ 236.1, subd. (f) (§ 236.1(f)).)

### 2. Analysis

Appellant's due process challenge targets language in section 236.1(c) authorizing a conviction based on an attempt to cause, induce, or persuade another person to engage in a commercial sex act with the intent to commit one of the specified sex offenses.

Appellant reasons as follows: First, section 236.1(c) criminalizes an attempt to commit the crime of human trafficking of a minor. Second, an essential element of any attempt crime is that the defendant must specifically intend to commit that offense. Third, when section 236.1(c) is construed in conjunction with section 236.1(f), it authorizes a conviction for attempted human trafficking even if the defendant did not specifically intend that his victim was a minor. Fourth, section 236.1(c) omits an essential element of attempted human trafficking because a defendant who did not specifically intend to cause a minor to engage in a commercial sex act did not specifically intend to commit the offense of human trafficking a minor.

Our first problem with this argument is its false premise that section 236.1(c) criminalizes an attempt to commit a crime. "An attempt to commit a crime is itself a crime and subject to punishment that bears some relation to the completed offense." (1 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Elements, § 56, pp. 341–342.) "An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." (§ 21a.) However, "[a]n attempt to commit a crime can be distinguished from those crimes where the attempt is the offense." (1 Witkin & Epstein, Cal. Criminal Law, *supra*, § 56, p. 342, italics omitted.) Section 236.1(c) defines the completed offense of human trafficking; the conduct described in that statute constitutes actual human trafficking, not attempted

8

human trafficking. Thus, the intent required to commit this crime is stated in the statute itself.

Section 236.1(c) provides that human trafficking of a minor includes attempting to cause, induce, or persuade "a person who is a minor" to engage in a commercial sex act with the intent to commit one of the target offenses listed in the statute. Under this prong of the statute, the prohibited conduct is attempting (i.e., specifically intending) to cause, induce, or persuade another person to engage in a commercial sex act with the intent to commit one of the target offenses. The statute requires that the other person must be a minor under the age of 18, but it does not require that the defendant specifically intend or even know that his victim is a minor.

A second problem with appellant's claim is that, although he seeks to invalidate the attempt language in section 236.1(c), what he is really complaining about is the fact that a mistake of age defense is not available to a defendant charged with this crime. However, appellant does not question the validity of section 236.1(f), which is the provision that bars the mistake of age defense. As discussed above, section 236.1(c) was enacted for the protection of children who are incapable of consenting to sexual activity. (*In re Aarica S.*, *supra*, 223 Cal.App.4th at pp. 1485–1486.) Section 236.1(f) furthers this legitimate legislative goal. In other similar contexts, courts have recognized that public policy justifies eliminating mistake of age defenses to sex crimes committed against children. (See *People v. Olsen* (1984) 36 Cal.3d 638, 647–648.)

Appellant contends that *People v. Hanna* (2013) 218 Cal.App.4th 455 (*Hanna*) supports his position. The *Hanna* defendant was convicted of attempted lewd and lascivious conduct with a child under the age of 14. On appeal, he argued the trial court erred by denying his request to instruct the jury on the defense of mistake of fact as to the victim's age. (*Id*. at p. 457.) The *Hanna* court agreed, reasoning as follows: "The mistake-of-fact defense, as a matter of public policy, does not apply to the commission of a lewd act on a child under the age of 14 years. [Citation.] Defendant, however, was not charged with committing a lewd act. He was charged with attempting to commit a lewd act." (*Id*. at p. 461, italics omitted.) The *Hanna* court went on to explain that, because an

9

attempt to commit any crime requires a specific intent to commit that particular offense, "[t]o attempt a violation of section 288, subdivision (a), the defendant must have specifically intended to commit a lewd act on a child under 14 years of age." (*Id.* at p. 462.) Thus, the court found that, a mistake of age defense was available to the defendant because if his intent was to commit lewd acts on an 18-year-old, as he had alleged, then he lacked the specific intent required to attempt to commit lewd acts on a child under the age of 14. (*Ibid.*)

*Hanna* illustrates why appellant's constitutional challenge fails. The *Hanna* defendant was not charged with committing lewd acts on a child but rather of attempting to do so. Here, appellant challenges the validity of a statute that deems an attempt to be a completed offense when the victim is a minor, and also expressly precludes a defendant from presenting a mistake of age defense. (§ 236.1, subds. (c) & (f).) The elements of this completed offense (including the intent element) derive from the statute itself, not from collateral authority pertaining to attempts to commit other crimes. As discussed, a plain reading of the statutory language indicates that a person violates section 236.1(c) by attempting to cause, induce, or persuade another person to engage in a commercial sex act, with the intent to commit one of the specified sex offenses listed in the statute. The other person—who the offender attempts to cause, induce, or persuade—must be a minor, but the offender need not specifically intend to have targeted a minor as his victim.

## B. Mistake About a Victim's Age Is Not a Defense to Human Trafficking

Count 1 of the amended information charged appellant with human trafficking of a minor for a sex act in violation of section 236.1(c) in that he "did willfully and unlawfully attempt to cause, induce, and /or persuade, JANE DOE, who was less than 18 years of age, to engage in a commercial sex act, with the intent to effect and/or maintain a violation of Penal Code section 266i."

Appellant argues that his count 1 conviction must be reversed because the jury was instructed that "[b]eing mistaken about the other person's age is not a defense to this crime." Appellant acknowledges that this directive appears in CALCRIM No. 1244, the official standard instruction regarding the elements of human trafficking. Nevertheless,

he contends that the instruction precluding a mistake of age defense had the effect of omitting an element of the crime he was charged with committing because it permitted a guilty verdict for an attempt crime without proof that appellant specifically intended to cause, induce, or persuade a minor to engage in a commercial sex act.

Appellant's argument is based on the same flawed reasoning underlying his constitutional challenge to section 236.1(c). As explained above, attempting to cause, induce, or persuade another person to engage in a commercial sex act for one of the specified purposes listed in this statute constitutes the completed offense of human trafficking provided that the other person is a minor, whether or not the defendant was aware of that fact. (§ 236.1, subd. (c).) Furthermore, section 236.1(f) expressly precludes a defendant charged with this crime from presenting a mistake of age defense. Thus, the jury was instructed correctly that a defendant's mistaken belief about the age of his victim was not a defense to this charge.

### C. Human Trafficking of a Minor Requires a Minor

During the trial court proceedings, appellant's primary theory was that a defendant cannot be convicted of the completed offense of human trafficking of a minor when no minor exists. However, appellant's current counsel did not pursue this claim on appeal.[5] Accordingly we requested and have considered supplemental briefs from the parties, which address this issue. (See *People v. Alice* (2007) 41 Cal.4th 668, 674; Gov. Code, § 68081.) For reasons we discuss below, we conclude that the absence of an actual victim precludes a conviction for the completed offense of human trafficking of a minor.

---

[5] Appellant's trial counsel repeatedly claimed that the absence of an actual minor person precluded a conviction under section 236.1(c). The defense brought a motion under section 995 to set aside the information on the ground that human trafficking of a minor is factually impossible when a police officer was posing as that minor. Defense counsel raised the issue again during the hearing on jury instructions, and a third time pursuant to a section 1118 motion to dismiss the count 1 charge.

11

### 1. Background

The trial court gave two substantive jury instructions about the count 1 charge of human trafficking of a minor. First, the court instructed the jury regarding the "meaning of *attempt*" with a version of CALCRIM No. 460, which stated, in part:

"In counts 1 and 3, it is alleged that defendant attempted to commit those offenses. In Count 1 it is alleged that defendant attempted to cause, induce, or persuade a minor to engage in a commercial sex act in violation of Penal Code section 236.1(c). And in Count 3, defendant is charged with attempted pimping, in violation of 664/266h(b)(1).

"Before I define each of those three [*sic*] substantive crimes, let me define the legal meaning of attempt. [¶] To prove that the defendant is guilty of attempting to commit a crime, the People must prove that: [¶] 1. The defendant took a direct but ineffective step toward committing the crime; [¶] AND [¶] 2. The defendant intended to commit the crime.

"[¶] . . . [¶]

"A person who attempts to commit a crime is guilty of attempting to commit that crime even if, after taking a direct step towards committing the crime, he or she abandons further efforts to complete the crime or if his or her attempt failed or was interrupted by someone or something beyond his or her control. On the other hand, if a person freely or voluntarily abandons his or her plans before taking a direct step toward committing the crime, then that person is not guilty of the attempted crime.

"To decide whether the defendant intended to commit the specific crime, please refer to the separate instructions that I will give you on that crime." (Italics omitted.)

Second, immediately following this attempt instruction, the trial court instructed the jury regarding the prosecutor's burden of proving the count 1 charge by giving a modified version of CALCRIM No. 1244, which stated:

"The defendant is charged in Count 1 with attempting to cause, induce, or persuade a minor to engage in a commercial sex act in violation of Penal Code section 236.1(c).

12

"To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant attempted to cause, induce or persuade another person to engage in a commercial sex act; [¶] 2. When the defendant acted, he intended to commit a felony violation of PANDERING, a violation of Penal Code section 266i; [¶] AND [¶] 3. When the defendant did so, the other person was under 18 years of age.

"A commercial sex act is sexual conduct that takes place in exchange for anything of value. [¶] When you decide whether the defendant caused, induced or persuaded the other person engage in a commercial sex act, consider all of the circumstances, including the age of the other person, his or her relationship to the defendant, and the other person's handicap or disability, if any.

"It does not matter whether the person was already a prostitute or an undercover police officer. [¶] Under the law, a person becomes one year older as soon as the first minute of his or her birthday has begun. [¶] The other person's consent is not a defense to this crime. [¶] Being mistaken about the other person's age is not a defense to this crime."

### 2. Analysis

When considered together, the two instructions discussed above gave the jury erroneous and conflicting guidance regarding the count 1 charge.

First, CALCRIM No. 460 was relevant because the first element of a section 236.1(c) violation requires an attempt to cause, induce, or persuade another person to engage in a commercial sex act. However, the trial court modified this model instruction by telling the jury that the count 1 charge was for *attempting* to violate section 236.1(c). This statement was erroneous. Appellant was charged with *the completed offense* of violating section 236.1(c) by attempting to cause, induce, or persuade a person who is a minor at the time of the commission of the offense to engage in a commercial sex act.

Second, the court added language to CALCRIM No. 460, which stated that the prosecution could prove appellant was guilty of count 1 by establishing the two elements of an attempt to commit a crime, i.e., a direct but ineffective step toward committing the

13

crime, and the requisite intent to commit the completed offense. This instruction was also wrong. The definition of an attempt was relevant to the count 1 charge because the prosecution alleged a violation of the attempt prong of the statute. But this jury instruction erroneously suggested that the jury could convict appellant of the completed offense of human trafficking if the elements of an attempt were satisfied even if the prosecution did not prove all of the elements of the completed offense.

Third, and crucially, the trial court modified CALCRIM No. 1244, the official standard instruction for the completed offense of human trafficking of a minor, by adding the following statement: "It does not matter whether the person was already a prostitute or an undercover police officer." On its face, this modification conflicts with the third element of section 236.1(c), which requires that when the offense was committed "the other person was under 18 years of age." (CALCRIM No. 1244.)

Appellant's trial counsel made this exact point at the hearing on jury instructions when he objected to the prosecutor's request to modify CALCRIM No. 1244 to state that "it doesn't matter if it was an undercover officer." Appellant's trial counsel insisted that this fact did matter, arguing: "My point is that what [the] prosecutor's asking for is for the Court to retool . . . the Cal Crim instruction to lower the burden so that they don't have to prove element three of Count 1. And I think that's preposterous. I've been saying this over and over again. There isn't anybody here under age 18. They can't prove that." The trial judge opined that this would be a good case to "litigate" this issue because the record was clear that "we do not have a child here." The court described the issue as interesting, but deferred ruling until after the presentation of evidence.

After the prosecution rested its case, appellant's trial counsel made a motion under section 1118 to dismiss count 1, arguing that the third element of section 236.1(c) could not be proven because the undisputed evidence established that there was no person under the age of 18 at the time that the crime was allegedly committed. The prosecutor disagreed, arguing that the key point was that appellant was charged under the attempt prong of section 236.1(c) and, thereof, all rules pertaining to attempt crimes applied, including that factual impossibility was not a defense, and that it did not matter whether

14

the alleged victim was an undercover officer. After extensive discussion, the trial court denied the section 1118 motion, finding that the fact that this case involved "a sting operation and not a real minor [was] not dispositive," and, although defense counsel had some "compelling arguments," it was up to the jury to "decide these things."

We disagree with the trial court's reasoning. It was not up to the jury to decide what the law requires. Appellant was charged with the completed offense of human trafficking and received correct instruction regarding that crime, including that the victim had to be a person under the age of 18. However, they also received instructions which erroneously stated or implied that the jury could convict appellant of the *completed offense* of human trafficking of a minor if the prosecutor proved *only* that appellant attempted to commit that offense, and *even if* the prosecutor could not establish the third element of human trafficking of a minor, which requires that when the offense was committed "the other person was under 18 years of age." (CALCRIM No. 1244).

These conflicting directives were highlighted during closing arguments. When appellant's trial counsel argued to the jury that the People could not prove the third element of the human trafficking charge because there was "no person here under the age of 18," the prosecutor made the following objection: "He's misstating the law. An 18 year old is not required, it's been made clear by the instructions." Defense counsel disagreed with this objection. Then the court gave the jury the following advice: "Let me say a couple things here. One, again, the instructions I gave are the law and if the lawyers make an argument that [is] inconsistent with what I instructed you, then you follow those instructions. There's a number of instructions that sometimes you have to read together. I gave you an instruction that you have to establish facts beyond a reasonable doubt. So, any of the three elements [defense counsel] just made reference to, they have to be proven beyond a reasonable doubt. [¶] I also gave you a couple instructions that said, in the context of this particular issue [of having] a minor that it can be: A, mistake of age is not a defense. Secondly, it can be an undercover police person. You have to weigh all of those together, apply the appropriate . . . standard which is reasonable doubt, beyond a reasonable doubt, and come to your conclusion."

15

Again, we disagree with the trial court's approach. The referenced instructions could not be read together because they were inconsistent, and it was not up to the jury to "weigh" these conflicting directives and come to its own conclusion about what the prosecutor did or did not have to prove.

There is no dispute in this case that Rachel Irving was not a real person and thus at the time appellant engaged in conduct that satisfied the first two elements of this crime, there was no other person under 18 years of age. This undisputed fact compels the conclusion that appellant did not violate section 236.1(c) because the third element of that offense cannot be proven.

The fact that a criminal defendant's intended victim is an imaginary person or a law enforcement officer posing as a minor does not mean that defendant committed no crime. But the crime is an attempt rather than the completed offense. (*Hatch v. Superior Court* (2000) 80 Cal.App.4th 170, 185–187; *People v. Reed* (1996) 53 Cal.App.4th 389, 396–397.) This outcome is consistent with the broader principle that factual impossibility is not a defense to a charge of attempt. (*People v. Reed*, at pp. 396–397.) However, this principle does not apply here, where appellant was charged with and convicted of the completed offense of human trafficking of a minor. In this context, the fact that there was no actual minor victim compels the conclusion that appellant did not violate section 236.1(c) because the third element of that offense cannot be proven.

In response to our request for supplemental briefing on this issue, the People summarily argue that section 236.1(c) "is one of very few statutes which punish completions and attempts identically." First, the People do not identify any statute that punishes an attempt and a completed offense identically. Second, the People ignore the statutory language of section 236.1(c) and the elements of this offense. As we have discussed, the elements of an attempt to commit a crime are materially different from the elements of human trafficking of a minor under the attempt prong of section 236.1(c),

which explicitly requires that the victim must be under the age of 18 when the crime is committed. Appellant does not cite any authority supportive of its contrary position.[6]

Although section 236.1(c) does not punish completions and attempts identically, it does define human trafficking to include an attempt to engage a minor in a commercial sex act for an illicit purpose, and that is the source of confusion. However, the attempt prong of the statute is distinct from the separate crime of attempt because a completed violation of the statute requires a person under the age of 18 while an attempt to violate the statute does not. This outcome is logical and fair. If there is an actual minor victim who the statute is expressly designed to protect, a mistake about the victim's age is not a defense to the completed crime, even under the attempt prong of the statute. If, however, there is no actual victim and therefore it is factually impossible to complete the crime, the defendant can nevertheless be guilty of an attempt to human traffic a minor, but only if he or she actually intended to human traffic a minor.

Unfortunately, in the present case, the two distinct offenses were conflated and thus the jury was asked to decide if appellant committed a crime that it was impossible for him to complete. Furthermore, although the jury received instruction regarding the elements of an attempt, the specific instruction on the count 1 charge told them that a mistake about the victim's age was not a defense to the charge. Because we cannot conclude that the jury necessarily found that appellant actually intended to traffic a minor, we cannot modify this conviction by reducing it to an attempt to violate section 236.1(c). (See *People v. Robinson* (2016) 63 Cal.4th 200, 211 ["[W]hen a reviewing court modifies a conviction to reflect a lesser included offense, it is not

---

[6] The only case involving a section 326.1(c) conviction that the People cite is *People v. Hicks* (2017) 17 Cal.App.5th 496 (*Hicks*). *Hicks* generally supports our conclusion that mistake of fact is not a defense to human trafficking of a minor. However, *Hicks* does not support the People's argument that the attempt prong of section 236.1(c) can be violated when there is no actual minor victim because, among other things: (1) the *Hicks* defendant was convicted of violating the actual conduct prong of section 236.1(c) not the attempt prong; and (2) the victims in that case were not only real people, they were minors.

empowered to make additional factual findings. It may only conform the verdict to the facts as found by the jury."].)

### D. The Attempted Pimping Jury Instruction Was Not Prejudicial

Appellant contends that the jury was instructed erroneously that mistake of age was not a defense to the count 3 charge of attempted pimping of a minor.[7]

Count 3 charged appellant with attempting to violate section 266h, subdivision (b)(1), which provides in part: "(b) Any person who, knowing another person is a prostitute, lives or derives support or maintenance in whole or in part from the earnings or proceeds of the person's prostitution, or from money loaned or advanced to or charged against that person by any keeper or manager or inmate of a house or other place where prostitution is practiced or allowed, or who solicits or receives compensation for soliciting for the person, when the prostitute is a minor, is guilty of pimping a minor, a felony, and shall be punishable as follows: [¶] (1) If the person engaged in prostitution is a minor 16 years of age or older, the offense is punishable by imprisonment in the state prison for three, four, or six years."

The jury received two substantive instructions pertaining specifically to this charge. First, the court instructed regarding the definition of attempt and its elements with the modified version of CALCRIM No. 460 quoted earlier in this opinion. Second, the court gave a modified version of CALCRIM No. 1550, which stated in part:

"The defendant is charged in Count 3 with attempted pimping, a violation of penal code sections 664 / 266(h)(b)(1). [¶] To prove that the defendant is guilty of pimping, the People must prove that: [¶] 1. The defendant knew that a person was a prostitute; [¶] 2. The money that the person earned as a prostitute supported the defendant, in whole

---

[7] Count 3 charged appellant with attempted pimping a minor over the age of 16 in violation of sections 664 and 266h, subdivision (b)(1), in that he "did unlawfully, and knowing, JANE DOE, a minor over the age of 16 years, to be a prostitute, ATTEMPTED [to] live and derive support and maintenance in whole and in part from the earnings and proceeds of said person's prostitution and from money loaned and advanced to and charged against said prostitute by a keeper, manager, and inmate of a house and other place where prostitution was practiced and allowed."

18

or in part; OR defendant asked for payment or received payment for soliciting prostitution customers for the person. [¶] AND [¶] 3. The person was a minor over the age of 16 years when she engaged in the prostitution.

" [¶] . . . [¶]

"It does not matter whether the person was already a prostitute or an undercover police officer. [¶] Under the law, a person becomes one year older as soon as the first minute of his or her birthday has begun. [¶] The other person's consent is not a defense to this crime. [¶] Being mistaken about the other person's age is not a defense to this crime."

Notably, the last sentence of this instruction, which states that a mistake about the victim's is age is not a defense to this crime, is not in the official version of CALCRIM No. 1150. Appellant contends that the trial court committed reversible by adding this directive to the instruction. He reasons that eliminating a mistake of fact defense had the effect of omitting an element of the crime by authorizing a conviction for an attempt even if appellant reasonably believed that his victim was not a minor and thus did not specifically intend to pimp a minor.

"Pimping in all its forms is not a specific intent crime." (*People v. McNulty* (1988) 202 Cal.App.3d 624, 630–631.) Thus, appellant would not have to have intended to pimp a minor to commit the completed offense. However, an attempt to commit a crime requires a specific intent to commit that crime. (§ 21a.) As discussed above, *Hanna*, *supra*, 218 Cal.App.4th 455, supports the proposition that a mistake of fact defense should be available if it would establish that the defendant lacked the specific intent required to attempt to violate a criminal statute.

In *People v. Branch* (2010) 184 Cal.App.4th 516, 518, 521–522 (*Branch*), the defendant was charged with multiple sex offenses against two victims, including attempted pimping and attempted pandering of a minor under the age of 16. He requested a jury instruction that his good faith, reasonable belief that this victim was 18 was a defense to the charges. The trial court denied this request and "[i]nstead, . . .

instructed the jury that to convict, it must find [the victim] was under the age of 16 at the time of the crimes alleged." (*Id.* at p. 520.) This ruling was affirmed on appeal.

The *Branch* court began its analysis of the jury instruction issue by finding that ignorance as to the age of the victim would not be a good defense to the completed crimes of pimping or pandering a minor because the defendant's conduct would be criminal regardless of the victim's age. (*Branch*, *supra*, 184 Cal.App.4th at p. 522.) By a parity of reasoning, the court concluded that "the criminal intent for the crimes of attempted pimping and pandering of a minor is the attempt to pimp and pander; the age of the victim only affects the severity of the sentence, not the criminality of the conduct." (*Ibid.*) Thus, the court found that regardless of the defendant's belief about his victim's age, he acted with criminal intent. (*Ibid.*)

In this case, the People contend that *Branch* is squarely on point and authorizes the instruction given here telling the jury that "[b]eing mistaken about the other person's age is not a defense" to attempted pimping a minor. Appellant contends that *Branch* was wrongly decided because it failed to "distinguish the intent necessary to commit a substantive offense from that required for an attempt to commit that offense." We disagree with both arguments.

*Branch* addressed a materially different factual and legal issue than we face here. In that case, the trial court denied a request to instruct the jury that a reasonable belief the victim was 18 was a defense to the charge *and instead* instructed the jury that the victim had to be under 16. Here, by contrast, the court expressly told the jury not to consider whether appellant believed his victim was a minor without instructing them that the victim actually had to be a minor. Indeed, the jury was told that it did not matter if the victim was a real person.

The *Branch* court did find that "the criminal intent for the crimes of attempted pimping and pandering of a minor is the attempt to pimp and pander" (*Branch*, *supra*, 184 Cal.App.4th at p. 522), which would make a mistake of age defense irrelevant. However, because the *Branch* jury was also required to find that the victim was actually

under 16 in order to convict the defendant of attempted pimping of a minor under the age of 16, that case is not controlling here.

We are willing to assume for purposes of argument that a mistake of age defense could be made with respect to a charge of attempted pimping of a minor when there is no actual minor victim. However, that defense would not have been available to appellant under the facts presented here. As our factual summary reflects, there was undisputed evidence that Irving told appellant she was only 17, that appellant expressly acknowledged that Irving was 17, and that appellant committed his crimes believing that Irving was 17. Thus, any error in instructing the jury that mistake of age is never a defense was harmless. It is not reasonably probable that the jury would have reached a different verdict on this charge if the instruction had not been given. (See *Hanna*, *supra*, 218 Cal.App.4th at pp. 462–463.)

## IV. DISPOSITION

The conviction for the completed offense of human trafficking a minor is reversed, appellant's other convictions are affirmed, and this case is remanded to the trial court for further proceedings, including resentencing.

_____
SMITH, J.*

We concur:

_____
STREETER, Acting P. J.

_____
REARDON, J.

* Judge of the Superior Court of California, County of Alameda, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

A149037, *People v. Shields*

22

| | |
|---|---|
| Trial Court: | Solano County Superior Court |
| Trial Judge: | Hon. Daniel J. Healy |
| Counsel for Appellant: | Robert Bryzman, under appointment by the Court of Appeal under the First District Appellate Project Independent Case System |
| Counsel for Respondent: | Xavier Becerra<br>Attorney General of California |
| | Gerald E. Engler<br>Chief Assistant Attorney General |
| | Jeffrey M. Laurence<br>Senior Assistant Attorney General |
| | Catherine A. Rivlin<br>Supervising Deputy Attorney General |
| | Sara Turner<br>Deputy Attorney General |

A149037, *People v. Shields*