Filed 6/2/21; On remand

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ANTONIO CHAVEZ MOSES III,<br><br>    Defendant and Appellant. | G055621<br><br>(Super. Ct. No. 16NF1413)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Julian W. Bailey, Judge. Affirmed in part, reversed in part, and remanded.

Mark Alan Hart, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve T. Oetting, Deputy Attorney General, for Plaintiff and Respondent.

\*        \*        \*

Antonio Moses, III, was convicted by a jury of violating Penal Code sections 236.1, subdivision (c)(1) (count 1, human trafficking of a minor); 664, subdivision (a), 266h, subdivision (b)(1) (count 2, attempted pimping of a minor); and 266i, subdivision (a) (count 3, pandering).[1] The district attorney sought review of our decision, which the Supreme Court granted. (*People v. Moses* (2019) 38 Cal.App.5th 757, review granted Nov. 26, 2019, S258143.)

The case now returns to us on remand from the Supreme Court. In *People v. Moses* (2020) 10 Cal.5th 893 (*Moses*), the high court reversed our ruling as to count 1. In its decision, the Supreme Court interpreted the statutory proscription against human trafficking of a minor codified in section 236.1, subdivisions (c) and (f). Subdivision (c) proscribes both completed and attempted sex trafficking of a victim "who is a minor at the time of commission of the offense." Subdivision (f) also provides that "[m]istake of fact as to the age of a victim of human trafficking who is a minor at the time of the commission of the offense is not a defense to a criminal prosecution under this section."

The Supreme Court determined that this mistake of fact language is inapplicable to prosecutions for attempted human trafficking under section 236.1(c)—"at least where" the supposed minor victim is an adult police decoy. (*Moses*, *supra*, 10 Cal.5th at p. 912; see *id.* at p. 909, fn. 10 [declining to address whether subdivision (f)'s preclusive language regarding mistake of age is similarly inoperative when a defendant's attempted sex trafficking victim "who is a minor at the time of the commission of the offense" (subds. (c) & (f)) is "an *actual minor*"].)

Accordingly, pursuant to the Supreme Court's ruling, in this case mistake of fact as to the age of the alleged victim remains a potential defense under the attempt

---

[1] All further statutory references are to the Penal Code. Where the context is clear, we omit statutory section references or truncate the citation when referring to a statute's subdivision, for example, "subdivision (f)" or "section 236.1(c)(1)."

prong because here count 1 involved an adult decoy, not an actual minor. Under these circumstances, Moses must have specifically intended to target for commercial sex acts a person he thought was a minor. During a retrial, the prosecution must establish this element of the offense beyond a reasonable doubt. (*Moses*, *supra*, 10 Cal.5th at pp. 912-913.) The jury here was instructed to the contrary when the trial court included in its instructions the language of subdivision (f), which states mistake of fact as to age "is not a defense to this crime." The use of such an instruction here constituted error.

Our review confirms Moses's contention that the jury was never instructed that to commit the offense of attempted human trafficking he had to know or believe that his alleged victim, "Bella," was underage. The court's instructions on counts 2 and 3, related to pandering and pimping, similarly did not require knowledge or belief that the victim was a minor.

In view of the foregoing, Moses correctly argues that "the instructions did not require the jury to find that he specifically intended to traffic a minor." (*Moses*, *supra*, 10 Cal.5th at p. 913.) It is our task on remand to address the effect of this omission. In doing so, we consider, pursuant to the direction of the Supreme Court, whether: "(1) Moses forfeited his challenge to the [count 1] instruction by failing to object below; (2) the instructions, viewed as a whole and in light of the trial record, were not reasonably likely to mislead the jury about the required specific intent; and (3) any error was harmless beyond a reasonable doubt given the evidence and the jury's other findings." (*Ibid.*)

The record demonstrates the trial court's failure to instruct the jury on a critical element of the human trafficking offense—intent to target a minor. Omitting an element of the offense is scrutinized under the strictest standard (see *Moses*, *supra*, 10 Cal.5th at p. 913). We find the error here was not harmless beyond a reasonable doubt; we therefore reverse the judgment and remand the case for a new trial with proper instructions.

3

## FACTUAL AND PROCEDURAL BACKGROUND

We set out the facts briefly below, with additional detail provided as relevant in the discussion that follows.

Detective Luis Barragan of the Santa Ana Police Department created a user profile for a fictitious 21-year-old female named "Bella B." (Bella) on a social network site known as Tagged.com. The site required its users to be 18 or older. The prosecutor introduced evidence at trial aimed at proving Moses contacted Bella and other Tagged.com users to recruit them to engage in prostitution. Assuming the role of Bella, Barragan responded to Moses's initial messages by stating she was in Vallejo "chasing the paper"—a phrase used in the pimping subculture to refer to working as a prostitute.

In a series of texts that day and the next, Moses advised Bella to frequent casinos and bars since they were lucrative prostitution venues. Barragan eventually responded that Bella was unable to do so because she was only 17 years old. Moses expressed repeated concern over the next few days that Bella was a police agent, as well as some reluctance to pimp a minor.

Moses nevertheless engaged in phone calls and texts with a female detective who assumed Bella's role. Upon hearing Bella was in Orange County, he offered to drive to her location and pick her up, even though he acknowledged, "This is a risk." Moses also expressed some reluctance related to Bella's age when he wrote, "I want to come get you bad as a mother fucker, but if I do, I'm going to have to take you to my momma[']s house until your birthday." Several days later, when Barragan told Moses that Bella had returned to Orange County, he arranged to meet her at a restaurant, where the detective who was role-playing Bella said she would wait in a bathroom to evade her current pimp. Bella had told Moses that she wanted to escape from the man because he was beating her.

Moses arrived at the restaurant in a Mercedes to await Bella's exit from the bathroom but, before their meeting could occur, he apparently spotted vice officers who

4

were staking out the scene. He texted Bella, "I see you not real. That's fucked up." He texted Bella, "I [k]new better" and "Ur the police." When he drove out of the parking lot, officers conducted a traffic stop and arrested him.

As noted at the outset, the jury convicted Moses in count 1 of human trafficking of a minor (§ 236.1(c)(1)), in count 2 of attempted pimping of a minor (§§ 664, subd. (a), 266h, subd. (b)(1)), and in count 3 of pandering (§ 266i, subd. (a)). In bifurcated proceedings, the trial court found Moses previously suffered a strike conviction (§§ 667, subds. (b)-(e), 1170.12, subds. (b), (c)(1)), but dismissed four prior prison term allegations (§ 667.5, subd. (b)) for lack of evidence. The court then imposed the high term of 12 years on count 1, doubled to 24 years based on the prior strike, and stayed under section 654 the imposition of midterm sentences for counts 2 and 3.

## DISCUSSION

I.      *Preliminary Issue: No Forfeiture*

As indicated in our introduction, the instruction the trial court gave the jury on "Human Trafficking of a Minor" was flawed. We note, however, that a change the trial court made to the standard CALCRIM instruction regarding the offense correctly anticipated the Supreme Court's holding in *Moses*. The trial court modified CALCRIM No. 1244 to delete an enumerated element requiring that when the defendant attempted to commit the trafficking offense: "3. . . . the other person [i.e., the victim] was under 18 years of age." (CALCRIM No. 1244.)

At trial Moses objected to the modification, arguing that the separate element was not "an oversight by [the] Judicial Council" in crafting the instruction, but rather was "there for a reason." Defense counsel argued, "We do not take elements away. We do not let a jury go back to the jury room with [fewer] requirements for proving up a charge."

5

The trial court explained that it had "merged" the age requirement with the attempt language of the instruction so that the instruction read as follows: "The defendant attempted to cause, induce or persuade a person who is a minor to engage in a commercial sex act." Defense counsel was correct that this amounted to deleting what had been a separate element requiring an actual minor as a victim of the offense, as the Judicial Council had concluded. The Court of Appeal in *People v. Shields* (2018) 23 Cal.App.5th 1242 reached the same conclusion as the Judicial Council, as did a majority of this panel. The Supreme Court disagreed when it disapproved *Shields* and reversed our decision. (*Moses*, *supra*, 10 Cal.5th at p. 913, fn. 13, & p. 914.)

On remand the initial question before us is whether Moses forfeited his instructional challenge. We find no forfeiture for several reasons. First, Moses has consistently argued the trial court's human trafficking instruction diminished any "requirement that the crime be directed at a minor." (Bold typeface omitted.) Defense counsel objected at trial that the court's modified instruction "lessens the burden for the prosecution" by "allowing the prosecution to gloss over that component," i.e., the victim's minority, "and the jury to do the same." Counsel's comments targeted the trial court's decision to "merge" elements of the offense, eliminating the stand-alone requirement stating that the victim must be a minor. Nevertheless, they also apply to the court's further modification of the standard instruction by including optional language derived from subdivision (f).

The Judicial Council provided in CALCRIM No. 1244 the following optional language: "[Being mistaken about the other person's [i.e., the victim's] age is not a defense to this crime.]" (Internal brackets added.) The trial court included the substance of this language by inserting language similarly tracking subdivision (f): "Mistake of fact as to the age of the alleged victim at the time of the commission of the offense is not a defense to this crime."

6

As Moses argues on appeal, this language "made it appear that mistake of age relating to human trafficking of a minor cannot be a defense if the victim is an adult." Precluding consideration of a defendant's mental state regarding the victim's age suggests his or her age-related intent, if any, is not relevant to the offense—let alone a necessary element. Any such suggestion is erroneous. Moses did not request, suggest, or endorse the inclusion of this language. The court modified the instruction on its own accord. Forfeiture essentially "estop[s] a party from asserting an error when 'his own conduct *induces the commission of error*.'" (*People v. Perez* (1979) 23 Cal.3d 545, 549-550, fn. 3.) That was not the case here.

Second, while respondent suggests Moses had a duty to request a clarifying instruction to settle the issue of whether the mistake of age preclusion was appropriate, a defendant's obligation to ask for clarifying instructions "does not apply when . . . the trial court gives an instruction that is an incorrect statement of the law." (*People v. Hudson* (2006) 38 Cal.4th 1002, 1012.)

Third, the trial court has a sua sponte duty to instruct the jury on the essential elements of an offense and general principles of law governing the case. (*People v. Flood* (1998) 18 Cal.4th 470, 480; *People v. Estrada* (1995) 11 Cal.4th 568, 574.) Moses did not specifically object to the inclusion of the mistake of age language. But we may not, under the guise of forfeiture, transfer to the parties the court's responsibility to instruct the jury accurately. It is the trial court's statutory duty to fully and correctly instruct the jury on the law applicable to the facts of the case. (§§ 1093, subd. (f), 1127.)

Fourth, the appellate court may review "any instruction given . . . even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby." (§ 1259.) "Instructions regarding the elements of the crime affect the substantial rights of the defendant, thus requiring no objection for

7

appellate review." (*People v. Hillhouse* (2002) 27 Cal.4th 469, 503.) We therefore turn to the merits of Moses's instructional claim.

II.    *The Instructions as a Whole Did Not Properly Instruct the Jury on the Requisite Specific Intent to Commit the Offense and Were Likely to Mislead the Jury*

      A.    *Precluding the Jury from Considering Mistake of Age Constituted Error*

Moses argues the trial court's inclusion of the mistake of age language was error that diluted the specific intent element of human trafficking. We agree. The Supreme Court in *Moses* held that "an attempt under section 236.1(c) does require as an element that the defendant intend to target a minor, at least where the victim is not in fact a minor." (*Moses*, *supra*, 10 Cal.5th at p. 912.) In other words, to commit human trafficking by "*attempting to induce* a minor, the defendant must act with . . . the intent to cause, induce, or persuade *a minor* to engage in a commercial sex act, at least when no actual minor victim is involved." (*Id.* at pp. 912-913, fn. omitted.)

The trial court's mistake of age language based on subdivision (f) was incompatible with interpreting the attempt alleged in count 1 to require specific intent as to the victim's age. The mistake of age preclusion suggested to the jury that a defendant facing attempted human trafficking charges need not harbor any specific mental state regarding the age of his intended victim.

Where there is an actual minor victim, this mistake of age preclusion has the salutary effect of protecting minors. As the Supreme Court has explained, when the mistake of fact defense regarding a victim's age is inapplicable, the defendant commits an offense involving a minor "at his or her peril." (*People v. Olsen* (1984) 36 Cal.3d 638, 649 (*Olsen*).) Precluding the defense renders the defendant's mental state regarding the victim's minority or majority immaterial.

Here, the Supreme Court has concluded the language of subdivision (f) does not operate in that way, at least for defendants facing charges arising from decoy operations. Where the mistake of age defense is precluded, such language would require

8

an actual minor as the alleged victim—or else the statutory necessity of a victim "who is a minor at the time of the commission of the offense" (subds. (c) & (f)) would be surplusage.

The Supreme Court concluded no actual minor is required, but declined to adopt the People's position that the offense proscribing attempted human trafficking of minors requires neither a minor nor intent to induce a minor to commit sex acts. The court "reject[ed] the People's argument that Moses could be convicted not only in the absence of an actual minor victim, but also without intent to induce a minor victim." (*Moses*, *supra*, 10 Cal.5th at p. 912.)

Because the court concluded intent to induce a minor victim is required (at least when there is no actual minor victim), the trial court's mistake of age instruction was erroneous; it should not have been given because a mistake related to the age of the victim may undermine or contradict the requisite intent to target a minor. The defendant's mental state regarding the victim's age is critical to the offense under the Supreme Court's analysis; the jury should not be inhibited by a mistake of age preclusion from fully considering and determining the defendant's actual intent. The instruction therefore should not be given in the circumstances here, where there is no actual minor victim involved.

B. *The Trafficking Instruction Erroneously Failed to Require Specific Intent to Target a Minor*

Compounding the inclusion of the erroneous mistake of age language is the fact that the trial court's human trafficking instruction did not tell the jury it had to find Moses intentionally targeted someone he believed was a minor before it could return a guilty verdict on count 1. The only express reference to intent in the count 1 instructions required the jury to determine "whether the defendant intended to maintain a violation of Pimping or Pandering," that is, whether the defendant "had the specific intent to effect or maintain a violation of section 266h (Pimping) or 266i (Pandering) of the Penal Code."

9

The trial court told the jury to "refer to the separate instructions I will give you on those crimes" to make that determination.

The court's instruction on pimping (CALCRIM No. 1150) included no requirement that Moses intended to target a minor. It included a single knowledge requirement, which was that Moses knew of the targeted person's prostitution activities; it did not require that he knew the person was or might be a minor.[2]

The court's instruction on pandering (CALCRIM No. 1151) likewise lacked any requirement that Moses intend to target a minor. Under the instruction, pandering requires simply that the defendant "encourage[d] a person" to engage in prostitution, regardless of whether those efforts were successful, and that the defendant "*intended* to influence a person to be a prostitute." (Italics added.) The specific intent referenced in the human trafficking statute, i.e., specific intent to engage in pandering, did not include the intent to target a minor.[3]

---

[2]    CALCRIM No. 1150, to which the court's human trafficking instruction referred the jury for the requisite specific intent, stated: "Pimping (Pen. Code, § 266h) [¶] The crime of Pimping requires proof that: [¶] 1. A defendant knew that a person was a prostitute; [¶] 2A. The money that this person earned as a prostitute supported defendant, in whole or in part; [¶] or [¶] 2B. A defendant asked for payment or received payment for soliciting prostitution customers for the prostitute." The instruction then defined "prostitute" and "lewd act" as follows: "A *prostitute* is a person who engages in sexual intercourse or any lewd act with another person in exchange for money or other compensation. A *lewd act* means physical contact of the genitals, buttocks, or female breast of either the prostitute or customer with some part of the other person's body for the purpose of sexual arousal or gratification."

[3]    CALCRIM No. 1151, as given to the jury, defined "Pandering (Pen. Code, § 266i)" as requiring two elements: "1. A defendant used promises or any device or scheme to encourage a person to become a prostitute, although the defendant's efforts need not have been successful; [¶] AND [¶] 2. That defendant intended to influence a person to be a prostitute." In addition to instructing the jury that it did "not matter" whether the person was an undercover officer, the instruction also defined the terms "prostitute" and "lewd act" as in CALCRIM No. 1150.

10

The court's human trafficking instruction included "attempted to" language that the prosecutor argued, during a colloquy with the trial court, implicitly incorporated as an element of the offense the specific intent to target a person the defendant thought was a minor. The court agreed. Both the court and the prosecutor were mistaken. No specific intent requirement related to the victim's age was included in the language the court gave the jury.

The court instructed the jury on human trafficking as follows: "In order to prove the defendant is guilty of this crime, the People must prove beyond a reasonable doubt that: [¶] 1) The defendant attempted to cause, induce or persuade a person who is a minor to engage in a commercial sex act. . . ." As the second element of the human trafficking offense, the court instructed the jury that the specific intent to commit "Pimping" or "Pandering" was necessary, which, as discussed, did not include the intent to target a minor.[4]

---

[4] In full, the trial court instructed the jury concerning the elements of attempted human trafficking as follows: "The defendant is charged in count 1 with Human Trafficking of a Minor in violation of section 236.1(c)(1) of the Penal Code. [¶] In order to prove the defendant is guilty of this crime, the People must prove beyond a reasonable doubt that: [¶] 1) The defendant attempted to cause, induce or persuade a person who is a minor to engage in a commercial sex act; [¶] AND [¶] 2) When the defendant did so, he had the specific intent to effect or maintain a violation of section 266h (Pimping) or 266i (Pandering) of the Penal Code." As noted, the instruction also stated: "To decide whether the defendant intended to maintain a violation of Pimping or Pandering, please refer to the separate instructions I will give you on those crimes." The human trafficking instruction further stated: "A 'minor' means a person less than 18 years of age. [¶] 'Commercial sex act' means sexual conduct on account of which anything of value is given or received by any person. [¶] In determining whether defendant attempted to cause, induce or persuade a minor to engage in a commercial sex act, you may consider the totality of the circumstances, including the stated age of the alleged victim, his or her relationship to the defendant, and any handicap or disability of the alleged victim. [¶] Consent by an alleged victim of human trafficking who is a minor at the time of the commission of the offense is not a defense to this crime. [¶] Mistake of fact as to the age of the alleged victim at the time of the commission of the offense is not a defense to this crime."

The court further instructed the jury concerning the attempt element of human trafficking as follows: "As used in this instruction, 'attempted to cause, induce, or persuade,' means that the defendant took a direct but ineffective step toward causing, inducing, or persuading a minor to engage in a commercial sex act. [¶] A direct step requires more than merely planning or preparing to commit an act. A direct step is one that goes beyond planning or preparation and shows that a person is putting his or her plan into action. A direct step indicates a definite and unambiguous intent to commit the act. It is a direct movement towards its commission after preparations are made. It is an immediate step that puts the plan in motion so that the plan would have been completed if some circumstance outside the plan had not interrupted the attempt."

During a discussion with the court conducted outside the presence of the jury, the prosecutor argued the phrase, "attempted to cause, induce or persuade a person who is a minor," requires "specific intent as it relates to the victim's age." In effect, the prosecutor added words ("specific intent as it relates to the victim's age") to the instruction. The prosecutor did not request that the instruction be modified to add this specific intent requirement, nor did the trial court do so. Instead, the only express specific intent requirement in the human trafficking instructions was the specific intent to engage in a criminal act, either "Pimping or Pandering"; the instructions thus failed to require knowledge or belief that the victim pimped or pandered to was a minor.

The error was more than an omission. The mistake of age language affirmatively and erroneously told the jury that a good faith belief by Moses that the victim was of age provides no defense to the charge (*Olsen*, *supra*, 36 Cal.3d at p. 649), including an attempt charge (*People v. Branch* (2010) 184 Cal.App.4th 516, 521-522)—and thus the defendant's actual intent was not an issue for the jury (or the defense) to focus on. Where the mistake of age defense is precluded, "[k]nowledge of the victim's age is not relevant. . . ." (*People v. Hicks* (2017) 17 Cal.App.5th 496, 506.) The trial court thus instructed the jury with language that was directly contrary to the prosecutor's

12

supposition that a trafficking attempt implicitly "require[s] . . . specific intent as it relates to the victim's age."  Consequently, by omission and by using expressly contrary language, the trial court's human trafficking instruction failed to convey, as required by the Supreme Court in *Moses*, that intent to target a minor was a required element of the offense.

C.     *Trial Counsel Could Not Correct the Error and Instruct the Jury that Intent to Target a Minor Was a Necessary Element of the Trafficking Offense*

Contending the prosecutor and defense attorney agreed in their arguments that specific intent to target a minor was necessary, respondent cites authority that nothing "precludes a state court from assuming that counsel's arguments clarified an ambiguous jury charge."  (Quoting *Middleton v. McNeil* (2004) 541 U.S. 433, 438 (*Middleton*).)  This argument does not carry the day for several reasons.

First, *Middleton* is inapposite.  There, the high court observed, "[T]his is not a case where the jury charge clearly says one thing and the prosecutor says the opposite."  (*Middleton*, *supra*, 541 U.S. at p. 438.)  As discussed, that is precisely the case here.

Moreover, *Middleton* involved an inconsistency arising from "three correct instructions and one contrary one" concerning the state of mind qualifying for imperfect self-defense.  (*Middleton*, *supra*, 541 U.S. at p. 438.)  Under those circumstances, nothing in the Constitution or federal law precluded a state court reviewing the defendant's conviction "from assuming that counsel's arguments clarified an ambiguous jury charge."  (*Ibid.*)  Respondent's reliance on California authority citing *Middleton* is misplaced for the same reason.  (*People v. Mills* (2012) 55 Cal.4th 663.)  There, "accurate jury instructions regarding mental illness and unreasonable self-defense, and both counsel's arguments on the merits of those issues" (*id.* at p. 680), made it unlikely the jury would have misapplied another instruction "to foreclose consideration of [the defendant's] mental state evidence" (*id.* at p. 681).

13

Second, the human trafficking instruction here was not just ambiguous or irrelevant—it was plainly wrong. It affirmatively misinstructed the jury that Moses's mental state as to the victim's age was irrelevant. Respondent concedes "the trial court did not expressly instruct the jury that appellant had to have a specific intent to traffic a minor." Nor did the court do so indirectly.

Third, while the prosecutor told the jurors—contrary to the trial court's instruction—that they had "to find and agree that [defendant] . . . knew she [Bella] was a minor," defense counsel misstated the court's instruction a different way. She told the jury in a confusing fashion that "[w]ithin human trafficking, you'll see that it is a . . . specific intent to pimp or pander a minor." That too was inaccurate, given that the court's human trafficking instruction mentioned specific intent in relation only to committing pimping or pandering, but without requiring intent or knowledge that the victim was a minor. The court's specific instructions on the intent necessary for those offenses in relation to human trafficking made no mention of the victim's age or the accused's knowledge thereof. The court's subdivision (f) instruction precluded meaningful consideration of Moses's mental state regarding the victim's age, as it would be no defense.

In sum, respondent's contention that we should look to trial counsels' statements instead of to the court's instructions turns the governing appellate presumption on its head. We presume the jury looks to the trial court and not to counsel for binding direction on the questions it must resolve. (*People v. Clair* (1992) 2 Cal.4th 629, 662-663.) The instructions concerning human trafficking were likely to mislead the jury about the required specific intent to target a minor. That was error under *Moses*.

14

III.     *Trafficking Charge Not Resolved Under Other Instructions, Nor Was Failure to Instruct the Jury on the Specific Intent Necessary to Traffic a Minor Otherwise Harmless*

The Attorney General argues that because the jury convicted Moses in count 2 of attempted pimping of a minor, the trial court's failure to instruct the jury on the specific intent necessary to commit human trafficking of a minor was harmless. We are not persuaded.

With respect to the attempted pimping of a minor charged in count 2, the trial court instructed the jury the elements of that charge were these: (1) The defendant knew that "Bella" was a prostitute; (2) The money or proceeds that "Bella" earned as a prostitute supported the defendant in whole or in part; and (3) "Bella" was over the age of 16 years but under the age of 18 when she was engaged in the prostitution.

At oral argument, respondent conceded that this instruction was at best misleading or confusing as to the third element. We believe the instruction was more than just misleading or confusing; it was erroneous as it failed to require the jury to find Moses *knew* that Bella was a minor when he engaged in pimping of her.

The record as a whole also demonstrates the court's instructional errors in precluding consideration of mistake of age and failing to require specific intent to target a minor were not harmless. As one example, the jury expressed concern during deliberations about what it described as the "bad faith" creation of the "Bella" profile at Tagged.com, which required users signing up for the messaging service to be 18 years old or older. By directing the jury to "consider the jury instructions as a whole" in evaluating the "weight" of such evidence, the court—no doubt unintentionally but effectively—short-circuited jury inquiry into determining what consideration defendant gave to Bella's age, since that was not a defense. By pointing the jury back to the instructions, the court reinforced its directive that the jury need not find specific intent to target a minor to commit attempted human trafficking.

15

Bella's credibility was for the jury to decide. Precluding full consideration of the age issue—because it did not matter under the instructions whether or which of her various representations Moses believed—hindered his defense. Whether "Bella" was lying as to her age at first when creating her profile or later was of no consequence under the instructions.

Yet under *Moses*, defendant had to intend to traffic a minor. For a specific intent offense, an honestly mistaken belief vitiates the requisite intent to commit the offense. The court's instruction that a mistaken belief regarding Bella's age was irrelevant improperly precluded those avenues of defense for Moses.

Finally, we cannot help but observe that no one in this case understood what the legally correct instructions were when the case was tried. Not the Judicial Council that promulgated incorrect instructions; nor the trial court that gave incorrect instructions omitting an essential element and precluding a defense; nor the prosecutor or defense counsel who both departed during their arguments from the instructions given by the court; and most importantly not the jury, which was misled by those cumulative errors.[5] In our view, under the circumstances, there is no justification for subjecting Moses to 24 years in prison after such a trial. We reverse his conviction on count 1.

---

[5] Only our esteemed colleague, Justice Aronson, through his dissent from our reversed opinion, stands above this display of error. Coincidentally, this is his last oral argument case before departing for his well-deserved retirement after many years of judicial service, and decades of prior devotion to the law. We cannot let pass this final opportunity to recognize his relentless commitment to getting cases exactly right and his passion for the rule of law. We will miss the privilege of working with him on a daily basis and experiencing his relentless enthusiasm for our shared endeavor: an enduring pursuit of justice.

## DISPOSITION

Moses does not challenge his conviction on counts 2 and 3. Consequently, they are affirmed. We reverse only his conviction on count 1 for human trafficking of a minor (§ 236.1(c)(1)), and remand the matter to the trial court for further proceedings, including retrial on that count at the People's election and resentencing on the remaining counts.


GOETHALS, J.

WE CONCUR:


ARONSON, ACTING P. J.


FYBEL, J.